IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)

| | | |
|---|---|---|
| APEX TOOL GROUP LLC, | § | |
| | § | |
| -vs- | § | Civil Action No. 3:13-CV-372 |
| | § | |
| DMTCO, LLC, et al. | § | |
| | § | |

MOTION BY EQUIPMENT GROUP INVESTMENTS, LTD.
FOR JUDGMENT ON THE PLEADINGS AND/OR
DISMISSAL FOR PLAINTIFF'S FAILURE TO STATE A CLAIM
UPON WHICH RELIEF CAN BE GRANTED

COMES NOW, the Defendant Equipment Group Investments, Ltd. ("EGI") and files this its motion for judgment on the pleadings and/or dismissal for the failure of Plaintiff, Apex Tool Group, LLC ("Apex" and/or "Plaintiff") to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12( c), and would show as follows:

A.   FACTS

1.   On October 13, 2013, Apex filed this lawsuit.  In addition to EGI,  Apex has brought claims against DOES 1 to 10, three (3) individually named defendants, Malcolm Lovelace ("Lovelace"), Duane Newland ("Newland") and Tony Stevens ("Stevens") and DMTCO, LLC ("DMTCO"),0 a company the three individuals formed.  Lovelace, Newland and Stevens worked for Cooper Tools, LLC  (the predecessor in interest to Apex) and they terminated their employment with Cooper Tools in November 2009, December 2009, and January 2010, respectively as a part of a voluntary reduction in force.  Apex alleges that after the individuals terminated their employment, they, by and through DMTCO, allegedly misappropriated trade secrets and confidential information of Apex to unfairly compete against it.  Apex further alleges, upon information and belief, that EGI

then began distributing products manufactured by DMTCO that are being made from the allegedly wrongfully obtained intellectual property and/or alleged confidential business information of Apex. [See Apex Complaint, DOC #1; ¶s 3-63].

2.  Apex alleges the following affirmative claims and/or actions for recovery against EGI: (1) misappropriation of trade secrets under the Uniform Trade Secrets Act, R.C. 1333.61, *et seq.*, and Ohio common law, [See Apex Complaint, DOC #1; ¶s 64-74]; (2) civil conversion under Ohio common law, [See Apex Complaint, DOC #1; ¶s 81-85]; and (3) civil conspiracy for acts complained, citing as examples, interference with existing customer contracts and/or business relationships and misappropriation, disclosure and/or use of confidential information and trade secrets, [See Apex Complaint, DOC #1; ¶s 86-92].

3.  EGI files this motion because the allegations and claims being made against it are purely speculative in nature. Apex has failed to generally and/or specifically, as applicable, plead sufficient factual allegations that provide fair notice of its claims and allegations against EGI.

### B. ARGUMENT FOR JUDGMENT ON THE PLEADINGS

**1) <u>EGI should be awarded judgment on the pleadings because the allegations made by Apex against EGI are purely speculative.</u>**

4.  Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff's complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "Although the complaint must be liberally construed in favor of the party opposing the motion to dismiss, the Court should not accept conclusions of law or unwarranted inferences of fact cast in form of factual allegations." *Sam Han v. Univ. of Dayton*, 541 Fed.Appx. 622, 625-26 (6th Cir.2013) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "'The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they

must show entitlement to relief.'" *Id.* (quoting *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir.2007)). "To state a valid claim, a complaint must contain either direct or inferential allegations respecting **all** the material elements to sustain recovery under some viable legal theory." *Id.* at 625 - 26 (citing *Twombly*, 550 U.S. at 562). "'The plausibility standard is not akin to a 'probability requirement,' but it asks for **more than a sheer possibility** that a defendant has acted unlawfully.'" *Kuvedina, LLC v. Cognizant Technology Solutions*, 946 F.Supp.2d 749, 753 (S.D.Ohio 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As a result, the complaint against EGI should be dismissed because the allegations made against it by Apex amount to, at most, "a sheer possibility that [EGI] has acted unlawfully."

5. In the first unnumbered paragraph of the complaint, Apex alleges that the three individual defendants engaged in trade secret misappropriation, *inter alia*, and secretly formed a company, defendant DMTCO, to unfairly compete with Apex. [See Apex Complaint, DOC #1; p. 2]. Then, tagged to the end of the sentence, Apex baselessly states "–all in concert with Defendant, Equipment Group Investments, Ltd. ("EGI"), a Texas-based competitor and distributor." *Id.* This naked allegation does not do more than create speculation or suspicion of a legally cognizable cause of action.

6. In numbered paragraph fifteen of the complaint, Apex baselessly states that "[u]pon information and belief, the Court has personal jurisdiction over EGI because EGI had one or more specific contact(s) with DMTCO and/or its founders, who were in Ohio at the time of such contact(s), in furtherance of the trade secret misappropriation and/or other unlawful activities challenged by this lawsuit." [See Apex Complaint, DOC #1; ¶ 15]. This "upon information and

belief" statement is not only facially speculative, but it is so ambiguous with its "and/or" statements as to amount to a mere guess that EGI acted unlawfully.

7. In numbered paragraph thirty-six of the complaint, Apex alleges that individual defendant Lovelace "could, and upon information and belief did, misappropriate trade secret and confidential business information . . . to divert Airetool customers and sales to DMTCO and/or EGI." [See Apex Complaint, DOC #1; ¶ 36]. Although EGI is mentioned in this abstract sentence, doing so does not even create speculation or suspicion of a legally cognizable cause of action against EGI nor does it provide any basis that EGI had knowledge of any alleged wrongful conduct of Lovelace.

8. In numbered paragraph forty-eight of the complaint, Apex states that it learned in 2010 that EGI "was now aligned with a then-unidentified U.S.-based manufacturer to offer identical tube expander products for less than Airetool." [See Apex Complaint, DOC #1; ¶ 48]. Again, even if true, this sentence does not even create speculation or suspicion of a legally cognizable cause of action against EGI nor does it provide any basis that EGI had knowledge of any alleged wrongful conduct of DMTCO.

9. In numbered paragraph forty-nine of the complaint, Apex alleges, "[u]pon information and belief, Individual Defendants conspired with EGI to obtain funding and other assistance for the launch of DMTCO and for the marketing, distribution, and sale of the DMTCO-manufactured knock-off Airetool products in direct competition with Plaintiff." [See Apex Complaint, DOC #1; ¶ 49]. This "upon information and belief" statement is not only facially speculative, but also does no more than create speculation or suspicion of some legally cognizable cause of action against EGI. For example, using the term "conspired" in front of an allegation that EGI assisted the individual defendants in obtaining funding to launch DMTCO does not render that behavior actionable–even

if it were true. Similarly, even if EGI had assisted in marketing, distribution, and sale of DMTCO products, tagging the language "knock-off Airetool products" on the end does not render the alleged conduct actionable. Apex fails to connect EGI with some conduct that amounts to more than a sheer possibility that it acted unlawfully.

10. In numbered paragraphs fifty-one through fifty-three of the complaint, Apex alleges that because EGI's product-line used to be manufactured in Poland and now EGI has access to a U.S.-based manufacture that includes a mandrel that, when reverse engineered, is "identical from a dimensional, tolerance, and materials perspective, with only minor inconsequential exceptions," that somehow EGI is liable to Apex for something. [See Apex Complaint, DOC #1; ¶s 51-53]. Regardless of who EGI uses to manufacturer its mandrel, the inference-stacking paragraphs do nothing more than create speculation or suspicion of a legally cognizable cause of action.

11. In numbered paragraphs fifty-five through fifty-eight of the complaint, Apex alleges that "upon information and belief," EGI "and/or" DMTCO have (a) had contact with Airetool customers, (b) relied on the individual defendants' knowledge of Apex's *alleged* confidential business information to undercut Apex's prices, and (c) used the individual defendants' knowledge of Apex's *alleged* confidential business information to "target for its initial start up phase some of the most commonly ordered Airetool products that were also consumable products ... and, therefore, items that are frequently re-ordered and likely to boost initial sales." [See Apex Complaint, DOC #1; ¶s 55-58]. These "upon information and belief" statements are not only facially speculative and factually insufficient, but they are so ambiguous that they amount to a mere guess that EGI acted unlawfully without any further material facts. Moreover, even if these alleged speculative statements were true they still do not support a claim against EGI for any wrongful conduct.

12. In numbered paragraph sixty-three of the complaint, Apex alleges "upon information and belief" that EGI is still servicing customers obtained through DMTCO and may still be using products manufactured by DMTCO or defendants "Does 1 through 10." [See Apex Complaint, DOC #1; ¶ 63]. But for the inflammatory conclusory language, "obtained unlawfully through its conspiracy" and "knock-off Airetool product," there is not even a speck of any actionable allegations contained in this paragraph. Even with the alleged conspiracy language, the assertions are not only facially speculative, but (at most) mere guesses that EGI was or is acting unlawfully.

13. In numbered paragraphs sixty-nine through seventy-one of the complaint, Apex attempts to check the boxes next to the *prima facie* elements for trade secret misappropriation. [See Apex Complaint, DOC #1; ¶s 69-71]. However, absent sufficient factual allegations, this form of conclusory and speculative pleading is precisely what the above-cited cases and Rule 8 are designed to avoid.

14. In numbered paragraphs eighty-two through eighty-five of the complaint, Apex attempts to check the boxes next to the *prima facie* elements for civil conversion. [See Apex Complaint, DOC #1; ¶s 82-85]. Again, Apex is merely citing the elements necessary for trying to prove EGI is liable and the pleading as a whole lacks sufficient factual allegations to support Apex's contentions.

15. Finally, in numbered paragraphs eighty-seven through ninety-two of the complaint, Apex again simply attempts to check the boxes next to the *prima facie* elements for civil conspiracy. [See Apex Complaint, DOC #1; ¶s 87-92]. Instead of making any specific allegations regarding EGI, Apex merely states that "Defendants conspired to accomplish an unlawful purpose, i.e., the interference with the valid, existing customer contracts and/or business relationships and/or

expectancies and the misappropriation, disclosure, and/or use of confidential information and trade secrets . . . for the purpose of transferring large amounts of business . . . to Defendants." [See Apex Complaint, DOC #1; p. 16; ¶ 88]. Tortious interference with existing contracts or business relationships are not even asserted as causes of action in the complaint and the pleading is devoid of sufficient factual allegations to support the underlying tort. Furthermore, as cited herein, the factual allegations, if any, supporting a misappropriation of trade secret(s) clam are insufficient to show EGI did anything wrong.

16. Accordingly, EGI should be entitled to a judgment on the pleadings because the allegations made by Apex against EGI are purely speculative.

**2) EGI should also be awarded a judgment on the pleadings for any civil conspiracy action alleged because the conspiracy claim is a derivative tort and no unlawful act sufficient to support a conspiracy has been adequately pled by Apex.**

17. "[A]n underlying unlawful act is required before a civil conspiracy claim can be successful." *Gosden v. Louis*, 116 Ohio App.3d 195, 219 (Ohio Ct.App.1996). "Additionally, a civil conspiracy claim 'must be pled with some degree of specificity, and vague or conclusory allegations that are unsupported by material facts will not be sufficient to state a claim.'" *Advanced Coatings Intern., Inc. v. Florida CirTech, Inc.,* 2012 WL 3067375 at *4 (July 27, 2012) (quoting *Ghaster v. City of Rocky River*, 2010 WL 2802685 at *11 (N.D. Ohio May 12, 2010) (quoting *Avery v. City of Rossford*, 145 Ohio App.3d 155, 165 (Ohio Ct. App. 2001))).

18. As explained above, the civil conspiracy pled by Apex is not actionable and inadequately speculative under the general pleading requirements. *See* ¶ 15, supra. Nevertheless, the civil conspiracy claim alleged by Apex is rendered even more inadequate in light of the

heightened specificity standard required for civil conspiracy causes of action. Apex has simply failed to plead enough general or specific facts to support its conspiracy claim(s) against EGI.

**3) EGI should also be awarded judgment on the pleadings for the misappropriation of trade secrets actions alleged against it because EGI is not a party to the documents alleged to constitute enforceable confidentiality agreements nor is Apex a party to the agreements.**

19. Apex has attached documents to its complaint entitled INVENTION ASSIGNMENT AND CONFIDENTIALITY AGREEMENT which are purported to be signed by Lovelace (on June 29, 2000), Newland (on June 29, 2000) and Stevens (on July 5, 2000). [See Apex Complaint, DOC #1; pp. 20-24; pp. 25-29 and pp. 30-34]. The agreements are between the individual Defendants and Cooper Industries, Inc., an Ohio corporation (herein called "EMPLOYER") on behalf of its operating unit/subsidiary Cooper Tools. *Id.*. The agreements also serve as a basis for the trade secret claims being made against the Defendants. [See Apex Complaint, DOC #1; ¶ 28-29].

20. Neither EGI or Apex were parties to the agreements between the individual Defendants and Cooper Tools.

21. Apex was formed in July 2010, and is a successor in interest of Danaher Corporation and Cooper Industries. [See Apex Complaint, DOC #1; ¶ 3]. The individual Defendants terminated their employment with Cooper Tools approximately six months before Apex was formed. [See Apex Complaint, DOC #1; ¶ 39]. The agreements do not contain any assignment clause in favor of Apex or any other successor in interest to Cooper Tools.

22. Nonetheless, Apex makes bald assertions that "... EGI used Plaintiff's misappropriated trade secrets to manufacture, market and/or distribute knock-off Airetool product in competition with Plaintiff" and "... EGI knew or had reason to know that Individual Defendants' knowledge and

access to Plaintiff's trade secrets were derived through improper means". [See Apex Complaint, DOC #1; ¶ 69-71]. Under the circumstances, the allegations are pure speculation.

23. Apex did not have a valid confidentiality agreement with the individual Defendants and arguably, if it somehow did, Apex fails to articulate how EGI would know of any such agreement. Therefore, EGI is entitled to a judgment on the pleadings for any misappropriation of trade secret claims alleged against it by Apex.

**4) Finally EGI should be awarded judgment on the pleadings for the civil conversion claims alleged against it by Apex because EGI did not convert anything.**

24. "Conversion is defined as 'a wrongful exercise of dominion over property in exclusion of the right of the owner, or withholding it from his possession under a claim inconsistent with his rights.'" *Haul Transport of VA, Inc. v. Morgan*, 2nd Dist. No. CA 14859, 1995 WL 328995 (June 2, 1995) (quoting *Zacchini v. Scripps-Howard Broadcasting Co.* (1976), 47 Ohio St.2d 224, 226, reversed on other grounds (1977) 433 U.S. 562. "The elements of a conversion cause of action are: (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *Id.* (quoting 18 American Jurisprudence 2d (1985) 146-147, Conversion, Section 2).

25 As explained above, Apex's conversion cause of action is inadequate and speculative under the general pleading requirement. *See* ¶ 14, supra. In addition, the conversion claims fail on its face, as to EGI, because Apex does not assert that EGI converted anything. Instead, Apex alleges that the individual Defendants converted intellectual property belonging to Apex that was used by DMTCO to manufacture similar items. The similar items were sold to EGI and EGI sold those times to the ultimate customer. Apex does not claim that EGI exercised any dominion over any alleged intellectual property of Apex, only that EGI sold items manufactured by a company that used the

alleged intellectual property in the manufacturing process. Accordingly, the conversion claims asserted by Apex against EGI should also be dismissed.

WHEREFORE PREMISES CONSIDERED, EGI prays that the Court grant it motion for judgment on the pleadings and for any and all other relief, both at law and in equity for which it may show itself justly entitled.

        Respectfully submitted,
**WALDRON & SCHNEIDER, L.L.P.**

 */S/ Mark A. Rubal*
Mark A. Rubal*
TBN: 17360325
FID: 214261
15150 Middlebrook Drive
Houston, Texas 77058
Phone: (281) 488-4438
Fax : (281) 488-4597
mrubal@ws-law.com
Attorneys for Equipment Group
Investments, Ltd.
Admitted Pro Hac Vice

OF COUNSEL:
LAGOS & LAGOS, PLL

 */S/ James H. Lagos*
Reg. No.
One South Limestone Street, Suite 1000
Springfield, Ohio 45502
Phone: (937) 323-5555
Fax: (937) 323-6564
jameshlagos@lagoscentral.com

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that a true and correct copy of the above was served on this the 30th day June, 2014, via ECF and electronic mail, as shown below and currently connected to this cause:

Timothy G. Pepper
Taft Stettinius & Hollister LLP
40 North Main Street, Suite 1700
Dayton, Ohio 45423
T: (937) 228-2838/ F: (937) 228-2816
pepper@taftlaw.com
*Counsel for Plaintiff Apex Tool Group, LLC*

J. Kellam Warren
Mainsail Lawyers
1340 Environ Way
Chapel Hill, North Carolina 27517
T: (919) 238-4000: F: (888) 501-9309
kellam@mainsaillawyers.com
*Counsel for Plaintiff Apex Tool Group, LLC*

Jose M. Lopez
Lopez, Severt & Pratt Co., LPA
18 East Water Street
Troy, Ohio 45373
T: (937) 335-5658/ F: (937) 339-6446
jml@lsplaw.org
*Counsel for Defendants, DMTCO, LLC, Duane J. Newland,*
*Malcom E. Lovelace and Tony A. Stevens*

        */s/ Mark A. Rubal*
        Mark A. Rubal