# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

APEX TOOL GROUP, LLC,

                Plaintiff,              :        Case No. 3:13-cv-00372

                                       District Judge Thomas M. Rose
        -vs-                      Magistrate Judge Michael R. Merz

                            :

DMTCO, LLC, et al.,

                Defendants.

---

# REPORT AND RECOMMENDATIONS ON DEFENDANTS' MOTION TO DISMISS

---

Before the Court is Defendants' Motion to Dismiss (Doc. No. 22). Plaintiff filed a Memorandum in Opposition ("Response," Doc. No. 25). Defendant did not file a Reply and the time to do so is now exhausted.

This case was referred to a magistrate judge on May 22, 2014. (Preliminary Pretrial Order, Doc. No. 17.) Motions to dismiss involuntarily are classified as dispositive under 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72, requiring a recommended disposition from a Magistrate Judge to whom they are referred.

As of October 30, 2013, the time of the filing of the Complaint, Plaintiff Apex Tool Group "Apex," was a Delaware limited liability company, with its principal place of business located in Maryland, and registered to do business in the State of Ohio. (Complaint, Doc. No. 1, PageID 2.) Defendants DMTCO, LLC, "DMTCO," was an Ohio limited liability company maintaining its principal place of business in the State of Ohio. *Id*. at PageID 3.  Additionally,

Defendants named in their individual capacity, Defendants Newland, Lovelace, and Stevens ("Individual Defendants"), were domiciled in the State of Ohio. Defendant Equipment Group Investments Ltd. ("EGI"), is and was at the time a Texas limited partnership, and "Doe" defendants, are listed as those whose names and addresses are currently unknown. *Id*. Plaintiff asserts that this Court has personal jurisdiction over Defendants as they conduct business in Ohio and have each committed acts and/or business transactions within the State of Ohio. *Id*. at PageID 3-4. In addition, the Court has subject matter jurisdiction over the claims asserted pursuant to 28 U.S.C. §§ 1332 and 1367. *Id.* at PageID 4.

Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases which are within the judicial power of the United States as defined in the United States Constitution and as further granted to them by Act of Congress. *Aldinger v. Howard*, 427 U.S. 1, 15 (1976). Therefore there is a presumption that a federal court lacks jurisdiction until it has been demonstrated. *Turner v. President, Directors and Co. of the Bank of North America*, 4 U.S. 8 (1799). Facts supporting subject matter jurisdiction must be affirmatively pleaded by the person seeking to show it. *Bingham v. Cabot*, 3 U.S. 382 (1798). The burden of proof is on the party asserting jurisdiction if it is challenged. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1935). A federal court is further obliged to note lack of subject matter jurisdiction *sua sponte. Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009).

Plaintiff states that there is diversity among parties and that they seek to recover damages in excess of $75,000, exclusive of interest and costs. (Complaint, Doc. No. 1, PageID 2-3, ¶¶ 2-10, 16.) Venue is proper in the Dayton location of court as each of the Individual Defendants resides within this district. Additionally, a substantial part of the events or omissions giving rise

to the underlying claims of the Complaint occurred in this judicial district. *Id*. at PageID 4, ¶¶ 17-19. Thus, subject matter jurisdiction is proper in this district pursuant to 28 U.S.C. § 1332 and 1367, as is venue in the Dayton location of courts pursuant to 28 U.S.C. § 1391 and S.D. Ohio Civ. R. 82.1(b) and (c). *Id*.

Statement of Law

In a diversity action such as this, the district court is obliged to apply the choice of law rules of the State in which it sits. *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 491 (1941); *Boyd v. LaMaster*, 927 F.2d 237 (6th Cir. 1991); *Macurdy v. Sikov & Love, P.A.*, 894 F.2d 818 (6th Cir. 1990). A federal court exercising diversity subject matter jurisdiction over state law claims must apply state substantive law to those claims. 28 U.S.C. § 1652; *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). In applying state law, the Sixth Circuit follows the law of the State as announced by that State's supreme court. *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008); *Ray Industries, Inc. v. Liberty Mut. Ins. Co.*, 974 F.2d 754, 758 (6th Cir. 1992); *Miles v. Kohli & Kaliher Assocs.*, 917 F.2d 235, 241 (6th Cir. 1990). "Where the Ohio Supreme Court [state supreme court] has not spoken, our task is to discern, from all available sources, how that court would respond if confronted with the issue." *In re Akron-Cleveland Auto Rental, Inc.*, 921 F.2d 659, 662 (6th Cir. 1990); *Bailey v. V & O Press Co.*, 770 F.2d 601 (6th Cir. 1985); *Angelotta v. American Broadcasting Corp.*, 820 F.2d 806 (6th Cir. 1987). The available sources to be considered if the highest court has not spoken include relevant dicta from the state supreme court, decisional law of appellate courts, restatements of law, law review commentaries, and the "majority rule" among other States. *Bailey*, 770 F.2d at 604. "Where a state's highest court has not spoken on a precise issue, a federal court may not disregard a

decision of the state appellate court on point, unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1485 (6th Cir. 1989); *accord Northland Ins. Co. v. Guardsman Products, Inc*., 141 F.3d 612, 617 (6th Cir. 1998); *Melson v. Prime Ins. Syndicate, Inc.*, 429 F.3d 633, 636 (6th Cir. 2005). This rule applies regardless of whether the appellate court decision is published or unpublished. *See Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 328 (6th Cir. 2000); *Puckett,* 889 F.2d at 1485; *Ziegler v. IBP Hog Market*, 249 F.3d 509, 517 (6th Cir. 2001).

Respondent's Motion is made under Fed. R. Civ. P. 12(c). In ruling on a motion for judgment on the pleadings, the Court must accept all well-pleaded material allegations of the complaint as true. *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 581 (6th Cir. 2007); *Ziegler*, 249 F.3d at 511-12; *Paskvan v. City of Cleveland Civil Serv. Comm'n.*, 946 F.2d 1233, 1235 (6th Cir. 1991), *citing Beal v. Missouri Pacific R.R.,* 312 U.S. 45, 51 (1941). The Court must then decide whether the moving party is entitled to judgment as a matter of law. *Lavado v. Keohane,* 992 F.2d 601, 605 (6th Cir. 1993). This is the same standard applied in deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Tucker v. Middleburg-Legacy Place,* 539 F.3d 545, 549 (6th Cir. 2008); *EEOC v. J. H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001). When a defendant attaches to a motion for judgment on the pleadings documents which are referenced in but not attached to the complaint, the court may consider the motion as being made under Rule 12(c), rather than converting it to a motion for summary judgment. *Weiner v. Klais & Co.*, 108 F.3d 86 (6th Cir. 1997).

Under Fed. R. Civ. P. Rule 12(c), a party may move for judgment on the pleadings after the pleadings have closed, but not so that trial is delayed. The standard of review for ruling on a motion on the pleadings brought under Rule 12(c) is equivalent to the standard of review for a

4

motion brought under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010); *see also Mixon v. Ohio*, 193 F.3d 389, 399-400 (6th Cir. 1999); *Kline v. Mortg. Elec. Sec. Sys.*, 2014 U.S. Dist. LEXIS 124406, *8 (S.D. Ohio 2014)(Rice, J.). "The purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or merits of the case." Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: Civil 2d § 1356 at 294 (1990); *see also Gex v. Toys "R" Us*, 2007 U.S. Dist. LEXIS 73495, *3-5 (S.D. Ohio, Oct. 2, 2007); *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993), *citing Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 279 (6th Cir. 1987). Stated differently, a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is designed to test, whether as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *Mayer*, 988 F.2d at 638, *citing Nishiyama*, 814 F.2d at 279.

The test for dismissal under Fed. R. Civ. P. 12(b)(6) has recently been re-stated by the Supreme Court:

> Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004)("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g., Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)(" Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

5

> [W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, "'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" 5 Wright & Miller § 1216, at 233-234 (quoting *Daves v. Hawaiian Dredging Co.*, 114 F. Supp. 643, 645 (D. Hawaii 1953) ); see also *Dura [Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)], at 346, 125 S.Ct. 1627, 161 L. Ed. 2d 577; *Asahi Glass Co. v. Pentech Pharmaceuticals, Inc.*, 289 F. Supp. 2d 986, 995 (N.D.Ill.2003) (Posner, J., sitting by designation) ("[S]ome threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase").

*Twombly*, 550 U.S. at 558 (*overruling Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), specifically disapproving of the proposition that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"); *see also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio,* 502 F.3d 545 (6th Cir. 2007).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Supreme Court made it clear that *Twombly* applies in all areas of federal law and not just in the antitrust context in which it was announced. Following *Iqbal*, district courts faced with motions to dismiss must first accept as true all of the factual allegations contained in a complaint.  This requirement "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Twombly*, 550 U.S. at 555. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 556.  Under *Iqbal*, a civil complaint will only survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. . . . Exactly how implausible is "implausible" remains to be seen, as a malleable standard will have to be worked

out in practice." *Courie v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629-30 (6th Cir. 2009). Applying the *Twombly/Iqbal* standard, Judge Rice has written:

> [O]n the plausibility issue, the factual allegations in the complaint need to be sufficient "to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. Of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1949-50). Further, "a legal conclusion [may not be] couched as a factual allegation" and mere "recitations of the elements of a cause of action" are insufficient to withstand a motion to dismiss. *Id.* (quoting *Hensley v. Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009)).

*White v. Chase Bank USA, NA*, 2010 U.S. Dist. LEXIS 102908 (S.D. Ohio 2010), as cited in *General Truck Drivers, Warehousemen, Helpers Sales & Serv., & Casino Emples., Teamsters Local Union No. 957 v. Heidelberg Distrib. Co.*, 2012 U.S. Dist. LEXIS 68996, at *6 (S.D. Ohio 2012); *B&P Company, Inc. v. TLK Fusion Entertainment, LLC*, 2013 U.S. Dist. LEXIS 26131, at *6 (S.D. Ohio 2013).

The Sixth Circuit has also recently held that to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," *Savoie v. Martin*, 673 F.3d 488 (6th Cir. 2012), *quoting Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dept. of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010), *quoting Twombly,* 550 U.S. at 570, and that "[a]ll well-pled facts in the complaint must be accepted as true." *Savoie*, *supra*, *citing Courie*, 577 F.3d at 629, *citing Iqbal*, 556 U.S. at 678.

Background

In considering this Motion, the Court turns to the factual allegations contained in the Complaint, which for the purposes of this Motion, the Court accepts as true.

7

Plaintiff's Complaint arises out of Defendants', Lovelace, Newland, and Stevens, prior employment with Apex's predecessor in interest, Cooper Tools, the trade secrets allegedly acquired during that employment period, and the misappropriation of the confidential information thereafter.

At the time of the allegations, Cooper Tools, and now its successor, Apex, produced the Airetool Product Line. (Complaint, Doc. No. 1, PageID 5, ¶ 25.) These products are used in the heat transfer industry, specifically to fabricate and maintain boilers, heat exchangers, condensers, and other tubular type equipment. *Id.* at ¶ 22. The line includes condenser/heat exchange expanders, boiler expanders, furnace expanders, as well as special application expanders, tube expanders, tube rolling controls, tube cleaners, and retubing tools. *Id.* The Airetool brand is recognized as an industry-leader known for its innovation and quality. *Id.* at ¶ 20.

The Individual Defendants, while under employment with Cooper Tools, now owned by Apex, had access to valuable proprietary, trade secret, and confidential business information (collectively known as "Protected Information") for the entire Airetool line. This included, but is not limited to, product design drawings, specifications and programming, manufacturing materials and processes, sales histories and strategies, business opportunities, and customer, vendor, and pricing information. *Id.* at PageID 5-6, ¶ 25.

Defendant Newland worked as the Airetool Programmer/Supervisor and was responsible for maintaining custody of the back-up tapes for the Company's server from the manufacturing facility. Further, he had access to, and worked with, confidential computer programs, including those that would allow manufacturing machines to produce tools to certain specifications and transfer such programming from one machine to the next. *Id.* at PageID 6, ¶ 26.

Defendant Lovelace worked as the Manufacturing Manager/Plant Superintendent of the facility and had access to all the confidential business information, including confidential business information and records about Airetool product sales, materials, designs, processes, and specifications. In addition, he had access to confidential customer lists which included contact information, purchasing history, preferences, and business opportunities. *Id*. at ¶ 27.

In order to ensure protection of the confidential information regarding Airetool products, employees with access to such materials were asked to sign confidentiality agreements. *Id*. at PageID 6, ¶ 29; *see also* Cooper Tools Confidentiality Agreements attached to Complaint, Doc. No. 1-1, PageID 20-34. Additionally, Ohio statutory law imposes a duty on employees to honor the confidentiality of their employer's information and trade secrets. (Complaint, Doc. No. 1, PageID 6, ¶ 30.)

In Spring of 2009, Cooper Tools announced a consolidation of its Springfield, Ohio, manufacturing operation with its Dayton, Ohio, plant. This move required transfer of equipment, inventory, and intellectual property to the Dayton site. *Id*. at PageID 7, ¶¶ 31-32. Individual Defendants also transferred to the Dayton Plant as part of the consolidation. *Id*. at ¶ 33. Plaintiff alleges that it was during this time period that Lovelace conspired with Newland and Foreman Tony Stevens to misappropriate trade secrets such as designs, blueprints, and programming, and to convert equipment and tools for their own purpose of accelerating the launch of their new competitor company, DMTCO. *Id*. at ¶ 34. As support for these allegations, Plaintiff points to the fact that each of the Individual Defendants had access to protected information and equipment during this time period. In addition, computers, programming, and certain equipment and tools that should have been transferred to the Dayton Plant were reported missing after the move. Once reported, Defendant Lovelace would often appear with the missing equipment/tools.

9

*Id*. at PageID 8, ¶¶ 37-38. However, a computer program and its operating hardware remain unaccounted for to this day. *Id*.

Newland, Lovelace, and Stevens terminated their employment with Cooper Tools as part of a voluntary reduction of force, in November 2009, December 2009, and January 2010, respectively. *Id*. at ¶ 39. Unbeknownst to Cooper Tools, and it successor, Apex, DMTCO was formed on July 29, 2009, several months prior to the voluntary terminations. *Id*. at ¶ 40.

At some point in 2010, Apex learned that a Texas-based distributor, Equipment Group Investments Ltd., had a new U.S. based manufacturer and was now offering products similar to the Airetool line at a cheaper rate and in direct competition with Plaintiff. *Id*. at PageID 9-10, ¶¶ 48, 52.

At some later point in 2010, Plaintiff obtained a "made in the USA" tube expander mandrel distributed by EGI, which was believed to have been manufactured by DMTCO, and tested it against Airetool standards. The test revealed the tube to be identical in dimension, tolerance, and a materials perspective to those manufactured by Plaintiff. *Id*. at PageID 10-11, ¶¶ 52, 59. The products were so similar that technical experts believed it would be impossible for even a former employee to manufacture such product without having the proprietary designs from Apex. *Id*. at PageID 11, ¶ 60. An Apex employee called the customer support number on EGI's website to inquire about the products and was told that EGI's entire line could now be ordered as "made in the USA" products, suggesting that DMTCO had access to other prints and designs in the Airetool product line. *Id*. at PageID 10, ¶ 53.

It is further alleged that DMTCO and EGI established a client base using Apex's protected information such as confidential business contacts, pricing, purchasing history, preference, etc.. *Id*. at PageID 11, ¶ 57. A report from an Apex customer conveyed that they had

10

been contacted by Defendant Lovelace to inform them (the customer) that he now had expanders and mandrels competitive with Airetool. *Id*. at PageID 10, ¶ 54. EGI and/or DMTCO encouraged Airetool's customers to test the new products against the original Airetool products to confirm that the new DMTCO/EGI products were identical or equivalent to the original Airetool line, thus representing to the customer that the products were in fact identical. *Id*. at PageID 10, ¶ 55. In addition, this confidential business information was used in DMTCO's start-up phase to focus its manufacturing based on the most commonly ordered Airetool products. *Id*. at PageID 11, ¶ 58.

As a result of the above facts, Apex has suffered a sharp decline of its sales of products competitively manufactured by DMTCO. *Id*. at PageID 11, ¶ 61.

In his Complaint, Plaintiff Apex raises the following claims:

1. First Claim for Relief: Misappropriation of Trade Secrets against all Defendants
2. Second Claim for Relief: Breach of Confidentiality Agreements against Individual Defendants
3. Third Claim for Relief: Civil Conversion against all Defendants
4. Fourth Claim for Relief: Civil Conspiracy against all Defendants
5. Fifth Claim for Relief: Civil Liability for Criminal Acts against Individual Defendants
6. Sixth Claim for Relief: Texas Theft Liability Act (Tex. Civ. Prac. & Rem. Code § 134.001 et seq.) against Individual Defendants

(Doc. No. 1.)

## ANALYSIS

### First Claim for Relief
### Misappropriation of Trade Secrets against all Defendants

The First Claim sets forth the allegation that the Individual Defendants obtained and misappropriated confidential proprietary information pertaining to Cooper Tools'/Apex's Airetool product line, such as design drawings and specifications, pricing information, customer contact information, and vendor and supplier contact information. (Complaint, Doc. No. 1, PageID 12.) They used this information in conjunction with Defendant EGI to create a company to manufacture and distribute similar products to directly compete with the Airetool products. It is further asserted that Defendant EGI "knew or had reason to know that Individual Defendants' knowledge and access to Plaintiff's trade secrets was derived through improper means." *Id*. at PageID 13. These actions to misappropriate trade secrets were willful and malicious and constituted a violation of the Ohio Uniform Trade Secrets Act, Ohio Rev. Code 1333.61, et seq., as well as Ohio common law. *Id*.

Defendant EGI argues that it should be granted judgment on the pleadings as the allegations made by Apex are purely speculative and do not support a cause of action. (Motion to Dismiss, Doc. No. 22, PageID 125.) In citing to Fed. R. Civ. P. 8(a)(2) a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." however, "[t]he factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *Id*. at PageID 125-6, *citing Han v. Univ. of Dayton*, 541 Fed. Appx. 622, 625-6 (6th Cir. 2013)(*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). EGI cites further case law for the proposition that to state a valid claim, a complaint "must contain either direct or inferential allegations respecting all the material elements to sustain recovery . . ." *Id*. at PageID 126, *citing Han*, 541 Fed. Appx. at 625-6, (*citing Twombly*, 550 U.S. 544 at 555.) To be sufficient, this factual matter, accepted as true, must state a claim for relief that is plausible on its

12

face. Plausibility requires more than a sheer possibility that the defendant has acted unlawfully. *Id., citing Kuvedina, LLC v. Cognizant Technology Solutions*, 946 F. Supp. 2d 749, 753 (S.D. Ohio 2013).

EGI argues that Apex has failed to create more than speculation or suspicion of their involvement with Individual Defendants in the alleged misappropriation of trade secrets. Instead of pleading facts, Apex merely added the verbiage "all in concert with Defendant, Equipment Group Investments, Ltd. ("EGI"), a Texas-based competitor and distributor" to their allegations against Lovelace, Newland, and Stevens. (Motion to Dismiss, Doc. No. 22, PageID 126.) Additionally, this suspicion is founded solely upon "information and belief." Information and belief also lays the foundation for personal jurisdiction over EGI as "Apex baselessly states that '[u]pon information and belief, the Court has personal jurisdiction over EGI because EGI had one or more specific contact(s) with DMTCO and/or its founders, who were in Ohio at the time of such contact(s), in furtherance of the trade secret misappropriation and/or other unlawful activities challenged by this lawsuit.'" *Id.*  Defendants then deconstruct the Complaint paragraph by paragraph alleging that Plaintiff never creates anything above speculation or suspicion, often basing allegations on "information and belief" and merely attempting to check off the necessary boxes to establish the *prima facie* elements for their claims, however lacking in sufficient factual allegations to support the grounds. *Id*. at PageID 129.

The Court turns to the argument that the factual basis for the Complaint was based upon "information and belief."

> A complaint need not set down in detail all the particulars of a plaintiff's claim, as Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." However, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662,

> 678-79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (stating that "[a] formulaic recitation of the elements of a cause of action" is not enough). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)(emphasis in original).

*Kline v. Mortg. Elec. Sec. Sys.*, 2014 U.S. Dist. LEXIS 124406 (S.D. Ohio 2014)(Rice, J.). Rule 8 "'does not impose a probability requirement at the pleading stage,' *Twombly*, 550 U.S. at 556, the factual allegations must be enough to raise the claimed right to relief above a speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim." *Cassidy v. The Teaching Co.*, LLC, 2014 U.S. Dist. LEXIS 55022, *5 (S.D. Ohio 2014), *citing Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-56.

The Sixth Circuit has permitted pleading on information and belief in certain circumstances, such as when a plaintiff may lack personal knowledge of a fact, but have "sufficient data to justify interposing an allegation on the subject" or be required to rely on "information furnished by others." *See Starkey v. JPMorgan Chase Bank, N.A.*, 2014 Fed. Appx. 444, 2014 U.S. App. LEXIS 14046, *7 (6th Cir. 2014), *citing* Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1224 (3d ed. 2012). "However, pleading on information and belief is not an appropriate form of pleading if the matter is within the personal knowledge of the pleader." Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1224 (3d ed. 2012). This Court has previously held that allegations pled on information and belief are permissible. *Cassidy*, 2014 U.S. Dist. LEXIS 55022, *8. "The Twombly plausibility standard . . . does not prevent a plaintiff from 'pleading facts alleged on information and belief' where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the

inference of culpability plausible." *Id.*, *quoting Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2nd Cir. 2010); *see also Price's Collision Ctr., LLC v. Progressive Haw. Ins. Corp.*, 2013 U.S. Dist. LEXIS 154225 (M.D. Tenn. 2013); *Kline v. Mortg. Elec. Registration Sys., Inc.*, 2011 U.S. Dist. LEXIS 60733 (S.D. Ohio 2011); *Simonian v. Blistex, Inc.*, 2010 U.S. Dist. LEXIS 117058 (N.D. Ill. 2010)(even post-*Iqbal*, courts have recognized that claims may be alleged on the basis of information and belief, particularly when those facts are within the possession of the defendant); *Antioch Litig. Trust v. McDermott Will & Emery LLP*, 738 F. Supp. 2d 758, 765 (S.D. Ohio 2010)("[Q]ualifying words such as 'upon information and belief' and 'appear' are the appropriate manner to plead when a plaintiff is drawing reasonable inferences from facts"); *Lewis v. Taylor*, 2010 U.S. Dist. LEXIS 98697 (S.D. Ohio 2010)(a plausible cause of action may be inferred from sufficient allegations made upon 'information and belief.')

Apex alleges that the Court has personal jurisdiction over Defendant EGI based upon information and belief as EGI has had one or more specific contact(s) with DMTCO and/or its founders, all residents of Ohio. (Complaint, Doc. No. 1, PageID 3-4, ¶¶ 11-15.) Additionally, it is alleged that each Defendant has conducted business and further committed various acts as alleged in the Complaint within the State of Ohio. *Id.* at ¶ 11. EGI contests personal jurisdiction. (Answer, Doc. No. 14, PageID 80-81, ¶¶ 11-15); (Motion to Dismiss, Doc. No. 22, PageID 126-27.)

The party asserting that a federal court has personal jurisdiction has the burden of proving it. *Relizon Co. v. Seybold*, 2012 U.S. Dist. LEXIS 91051, * 4 (S.D. Ohio 2012), *citing Brunner v. Hampson*, 441 F.3d 457 (6th Cir. 2006); *CompuServe, Inc., v. Patterson*, 89 F.3d 1257 (6th Cir. 1996); *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991); *Weller v. Cromwell Oil Co.*, 504 F.2d 927 (6th Cir. 1974). If the court determines to decide the issue without an evidentiary

hearing, however, the party need only make a prima facie showing. *Relizon Co.,* 2012 U.S. Dist. LEXIS 91051, *4, *citing Schneider v. Hardesty*, 669 F.3d 693 (6th Cir. 2012), *citing Serras v. First Tennessee Bank, M.A.*, 875 F.2d 1212 (6th Cir. 1989). Facts asserted on information and belief will be assumed true for purposes of determining if there is personal jurisdiction. *MedChoice Fin., LLC v. ADS Alliance Data Sys.*, 857 F. Supp. 2d 665, 677 fn3 (S.D. Ohio 2012), *citing Palnik v. Westlake Entn't, Inc.*, 344 F. Appx. 249, 252 (6th Cir. 2009); *see also Bridgeport Music v. Still N The Water Publ'g*, 327 F.3d 472, 478 (6th Cir. 2003).

As previously stated, in diversity cases, federal courts apply the law of the forum state. This applies to making a determination as to whether personal jurisdiction exists. *Relizon Co.*, 2012 U.S. Dist. LEXIS 91051, *5; *LAK, Inc., v. Deer Creek Enterprises*, 885 F.2d 1293, 1298 (6th Cir. 1989); *Southern Machine Co. v. Mohasco Indus.*, 401 F.2d 374, 376, n.2 (6th Cir. 1968). In determining whether the state court has personal jurisdiction over a nonresident defendant, the court must consider whether the state's long arm statute and civil rules confer such jurisdiction and if so, whether granting that jurisdiction would deprive the defendant of his right to due process of law pursuant to the Fourteenth Amendment of the United States Constitution. *Relizon Co.*, 2012 U.S. Dist. LEXIS 91051, *5; *see also Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 235 (1994), *citing U.S. Sprint Communications Co., Ltd. Partnership v. Mr. K's Foods, Inc.*, 68 Ohio St. 3d 181, 183-84 (1994).

Ohio's Long- Arm jurisdictional statute, Ohio Rev. Code § 2307.382, is the applicable provision for determining if a nonresident is subject to personal jurisdiction of this Court. The statute provides:

> (A)    A court may exercise person jurisdiction over a person who
> acts directly or by an agent, as to a cause of action arising
> from the person's:

(1)     Transacting any business in this state;

(2)     Contracting to supply goods or services in this state;

(3)     Causing tortious injury by an act or omission in this state;

(4)     Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(5)     Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provides that he also regularly does or solicits business, or engaged in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(6)     Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

(7)     Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity;

(8)     Having an interest in, using, or possessing real property in this state;

(9)     Contracting to insure any person, property, or risk located within this state at the time of contracting;

(B)     When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

Considering the pleadings in the light most favorable to the Plaintiff, under Ohio Rev.

Code § 2307.382, this Court finds sufficient support for exercising personal jurisdiction over

17

Defendant EGI based on the cause of action arising from Defendant's "transacting any business in this state."

The Sixth Circuit has adopted a three prong approach for determining whether the extension of personal jurisdiction over a nonresident defendant comports with or offends due process. *See Berning v. BBC, Inc.,* 575 F. Supp. 1354, 1356 (S.D. Ohio 1983), *citing World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980); *Hanson v. Denckla*, 357 U.S. 235 (1958); *International Shoe Co. v. Washington*, 326 U.S. 310 (1945).

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Air Products & Controls, Inc. v. Safetech, Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007), *quoting Southern Machine Co.,* 401 F.2d at 381.

The purposeful availment requirement ensures that a defendant "will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts or of the 'unilateral activity of another person or third person." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985). Rather, "jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that that create a 'substantial connection' with the forum State." *Id*. Put another way, there must be "an action of the defendant purposefully directed toward the forum state." *Asahi Metal Industry Co. v. Superior Court of California, Solano County*, 480 U.S. 102, 112 (1987). Placement of a product into the stream of commerce, without more, is not a sufficient act of the defendant purposefully directed toward the forum state. *Id*. Rather additional conduct is needed to show an intent or purpose to serve that market, such as

designing a product for the forum state, advertising in the forum state, or marketing the product through a distributor in that state. *Id.*, *see also The Cadle Company v. Schlichmann*, 123 Fed. Appx. 675, 678 (6th Cir. 2005)(adopting the "Zippo sliding scale" approach to determine whether the operation of a website constitutes purposeful availment to a forum state.) Telephone calls and facsimiles have been deemed to be sufficient to establish purposeful availment. *Intera Corp. v. Henderson*, 428 F.3d 605 (6th Cir. 2005).

Here it is alleged that Defendants EGI had a working relationship with Ohio-based company DMTCO, though the duration of such relationship has not been established, as well as the Individual Defendants, all residents of Ohio. There is evidence to suggest that EGI helped DMTCO/Individual Defendants with the initial company set-up and launch and later served as the distributor of products manufactured by DMTCO. It is further alleged that this was an on-going business relationship as opposed to a one-time transaction. In drawing all inferences in favor of the Plaintiff, EGI had sufficient contact and a substantial connection with the State of Ohio. The business activities and acts arising from this contact demonstrate a purposeful availment with this forum state.

The second prong requires that the cause of action arise from the defendant's activities in the forum state. *Southern Machine Co., Inc.*, 401 F.2d at 381. The Sixth Circuit has held that the "arising from" prong is satisfied when the "operative facts of the controversy arise from the defendant's contacts with the state." *Intera Corp.*, 428 F.3d 617, *quoting Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000). "'Physical presence is not the touchstone of personal jurisdiction,' and hence, personal jurisdiction may exist over a defendant although he is not physically present in the forum if he 'purposefully directs communications into the forum, and

those communications form the 'heart' of the cause of action.'" *Id.*, quoting, *Neal v. Janssen*, 270 F.3d 328, 333 (6th Cir. 2001).

In this case, Plaintiff has offered facts to show that there was an ongoing business relationship between the Individual Defendants and Defendant EGI. Apex alleges contact between EGI and the defendants in Ohio in a business capacity, specifically to offer assistance in the start-up of DMTCO and to assist in the selling and distribution of the finished products, thus placing "knock off" Airetool products into the stream of commerce. Accepting Plaintiff's contention as true, these communications form the "heart" of the cause of action and the second prong is met as the "operative facts of the controversy arise from the defendant's contacts with the state."

When the first two elements of this test are met, a presumption arises that the third element has also been met. *Reliance Elec. Co. v. Luecke*, 695 F. Supp. 917, 920 (S.D. Ohio 1988). As such, the extension of personal jurisdiction over nonresident defendant EGI does not offend due process and this Court may proceed to consider the case before it in regard to this defendant. The Court now turns to the remainder of the Motion to Dismiss.

To establish a cause of action for misappropriation of trade secrets under Ohio's Uniform Trade Secrets Act, Ohio Rev. Code 1333.61 et seq., a plaintiff must prove by a preponderance of the evidence that (1) a trade secret exists; (2) the trade secret was acquired as a result of a confidential relationship; and (3) and there was unauthorized use of the trade secret. *Kendall Holdings, Ltd. v. Eden Cryogenics LLC*, 846 F. Supp. 2d 805, 817 (S.D. Ohio 2012), *reversed and remanded on other grounds* 521 Fed. Appx. 453 (6th Cir. 2013); *see also Penetone Corp. v. Palchem, Inc.*, 627 F. Supp. 997, 1005 (N.D. Ohio 1985).

Ohio has adopted the definition of trade secret set forth in 4 Restatement of Torts (1939) at §757, comment b:

> A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, a pattern for a machine or other device, or a list of customers. . . . A trade secret is a process or device for continuous use in the operation of the business. Generally it relates to the production of goods, as, for example, a machine or formula for the production of an article. It may, however, relate to the sale of goods or to other operations in the business, such as a code for determining discounts, rebates or other concessions in a price list or catalogue, or a list of specialized customers, or a method of bookkeeping or other office management.

See *Valco Cincinnati, Inc. v. N&D Machining Service, Inc.*, 24 Ohio St. 3d 41 (1986); *Wiebold Studio, Inc. v. Old World Restorations*, Inc., 19 Ohio App. 3d 246 (1985); *Murray v. Bank One, Columbus, N.A.,* 64 Ohio App. 3d 784 (Franklin Cty. 1990); *see also* Ohio Rev. Code § 1333.61(D)(listing various forms of information that may be considered a trade secret if it meets the additional requirements that "(1) it derives independent economic value, actual or potential, from not being generally known to, and not readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (2) it is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.")

The Court applies a six factor test to determine whether the information is a trade secret under Ohio Rev. Code § 1333.61(D):

> (1) The extent to which the information is known outside the business,
> (2) The extent to which it is known to those inside the business, i.e., by the employees,
> (3) The precautions taken by the holder of the trade secret to guard the secrecy of the information,

21

> (4) The savings effected and the value to the holder in having the information as against competitors,
> (5) The amount of effort or money expended in obtaining and developing the information,
> (6) The amount of time and expense it would take for others to acquire and duplicate the information.

*Kendall Holdings, Ltd. v. PHPK Technologies*, 521 Fed. Appx. 453, 459 (6th Cir. 2013), *quoting State ex rel The Plain Dealer v. Ohio Dep't of Ins.*, 80 Ohio St. 3d 513, 525 (1997).

The Court accepts the following factual allegations as true. The Airetool line was established in 1929. (Complaint, Doc. No. 1, PageID 5, ¶ 20); (Response, Doc. No. 25, PageID 144.) Years of financial investment and product development, invention, testing, and design have gone into making Airetool a widely recognized brand in the industry. (Complaint, Doc. No. 1, PageID 5, ¶¶ 23-24.) Apex, a joint venture between Danaher Corporation and Cooper Industries, was formed in July 2010. (Response, Doc. No. 25, PageID 158); *see also* Complaint, Doc. No. 1, PageID 5, ¶ 25. Apex "is the successor in interest to the assets, liabilities and contracts of various tool business subsidiaries of Danaher Corporation and Cooper Industries including, but not limited to those of Cooper Tools, . . . which is now a wholly-owned subsidiary of Apex. . . ." *Id*. at 158-159. Thus, the entirety of Cooper Tools' Airetool line is now owned by Plaintiff Apex.

Certain employees were permitted access to the protected information and as discussed below, measures were taken to establish a confidential relationship and to protect the secrecy of the information in the form of confidentiality agreements and company policies. *See infra*. It is further noted that once the competitor's products were discovered, Apex had technical experts reverse engineer the product and they determined that the product was so similar to the Airetool product that it would be impossible to replicate, even for a former employee, without the specifications and designs for the original Airetool product. *Id*. at PageID 11, ¶¶ 59-60. For the

purposes of this Motion, Plaintiff has set forth sufficient facts to establish the existence of a trade secret.

Next, the Court turns to the second prong, whether the trade secret was acquired as a result of a confidential relationship. Under Ohio law, the party claiming trade secret status has the burden of demonstrating that it took reasonable steps to protect and maintain the secrecy of the information. *Niemi v. NHK Spring Co., Ltd.*, 543 F.3d 294, 302 (6th Cir. 2008).

Apex states that this protected information was confidential, known only to approved employees in positions of trust. (Complaint, Doc. No. 1, PageID 13, ¶ 67.) The company took reasonable efforts to maintain the secrecy of this information, including confidentiality agreements and related company policies. *Id*. at PageID 12 ¶ 66. The Individual Defendants obtained this information while employed in these positions of trust, specifically that of the Supervisor, Defendant Newland, and the Manufacturing Manager/Plant Superintendent, Defendant Lovelace. *Id*. at PageID 6, ¶¶ 26-27. Newland had access to and regularly worked with confidential computer programs that would have allowed manufacturing machines to produce Airetool products to precise specifications and would allow the transfer of such programming from one machine to another. *Id*. at ¶ 26. Loveland, serving in his role of employment, had unlimited access to confidential business records including records of sales, materials, designs, processes, specifications, customer information, purchasing histories, preferences and business opportunities. *Id*. at ¶ 27.

In support of this confidential relationship prong, Apex has submitted attachments of signed confidentiality agreements between the Individual Defendants and Plaintiff's predecessor in interest, Cooper Tools. Each agreement contained the following clause:

       1.       Confidential Information

EMPLOYEE agrees during his/her employment and thereafter not to reveal to any person, unless authorized in writing by EMPLOYER, any confidential information of EMPLOYER or of others which EMPLOYEE knows or ought to know is confidential or that EMPLOYER has confidential information obligations.

EMPLOYEE and EMPLOYER agree that confidential information includes, but is not limited to, information in any form whatsoever pertaining to: inventions, designs, data, discoveries, marketing data, strategies, business plans, product plans and competitive activity data; all financial and profit information not required by law to be published; purchasing or cost data; sales data including customer lists, booking reports, current sales information, pricing, billing and other information; information considered as proprietary by EMPLOYER; or any other information pertaining to the EMPLOYER or made available to EMPLOYEE by the EMPLOYER and identified or treated as confidential or secret.

***

EMPLOYEE agrees that, if, when and after EMPLOYEE shall leave the employ of EMPLOYER, EMPLOYEE will not carry away or disclose any confidential or secret information.

(Cooper Tools Confidentiality Agreement, Complaint, Doc. No. 1-1, PageID 21.)

Thus, in making all reasonable inferences in favor of the Plaintiff, Apex has stated a plausible basis to support the second prong for misappropriation of a trade secret. The reasonableness of these efforts is a material question of fact and must be determined by the finders of fact.

Finally, the Court considers whether there is a plausible basis for the third prong, whether there was unauthorized use of the trade secret. "Misappropriation" is defined by statute as:

(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;

(2) Disclosure or use of a trade secret of another without the express or implied consent of the other person by a person who did any of the following:

> (a) Used improper means to acquire knowledge of the trade secret;

> (b) At the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret that the person acquired was derived from or through a person who had utilized improper means to acquire it, was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or was derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use;

> (c) Before a material change of their position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Ohio Rev. Code § 1333.61(B). "Improper means" include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." Ohio Rev. Code § 1333.61(A); *Kendall Holdings, Ltd. v. PHPK Technologies*, 521 Fed. Appx. 453, 456 (6th Cir. 2013).

Various courts have recognized the difficulty plaintiffs in trade secret cases may have in providing direct evidence to prove misappropriation. *See Lumenate Tech, LP v. Integrated Data Storage, LLC*, 2013 U.S. Dist. LEXIS 160414, *17 (N.D. Ill. 2013). "In most cases, plaintiffs . . . must construct a web of perhaps ambiguous circumstantial evidence from which the trier of fact may draw inferences which convince him that it is more probable than not that what plaintiffs allege did in fact take place." *Id.*, *quoting PepsiCo, Inc. v. Redmond*, 1995 U.S. Dist. LEXIS 19380 (N.D. Ill. 1996) (*quoting SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1261 (3rd Cir. 1985)). The Sixth Circuit cited *SI Handling Systems*, among other various circuit cases, in *Stratienko v. Cordis Corp.*, 429 F.3d 592, 600 (6th Cir. 2005), when it held that there is a strong

argument that courts may properly consider sufficient circumstantial evidence in trade-secret cases, specifically when that evidence demonstrates that "(1) the misappropriating party had access to the secret and (2) the secret and the defendant's design share similar features." *See also Brake Parts, Inc. v. Lewis*, 443 Fed. Appx. 27, 31 (6th Cir. 2011). Ohio courts have found that "[t]he existence of an actual threat of irreparable injury may be established by showing that the employee possessed knowledge of the employer's trade secrets." *Litigation Management v. Bourgeois*, 2011-Ohio-2794, ¶ 14 (8th App. Dist. 2011), *quoting Levine v. Beckman*, 48 Ohio App.3d 24, 27 (1988); *see also PolyOne Corp. v. Papadopulos*, 2011 Ohio Misc. LEXIS 157, *9 fn. 9 (Cuyahoga Cty, 2011)(holding that no evidence direct or circumstantial had been produced to show that trade secrets and other confidential information had been used or revealed.)

The Individual Defendants were employed with Cooper Tools in positions of trust, which granted them access to confidential, trade secret, and proprietary information related to the Airetool line. (Complaint, Doc. No. 1, PageID 13, ¶ 67); (Response, Doc. No. 25, PageID 145.) On July 29, 2009, while still under employment at Cooper Tools, the Individual Defendants formed a competing company DMTCO. This company was formed around the same time as the Airetool plant consolidation which required massive transfer of equipment, inventory, and intellectual property. This provided an opportunity for individual defendants to obtain various trade secret and confidential business information. (Complaint, Doc. No. 1, PageID 7, ¶¶ 34-36); (Response, Doc. No. 25, PageID 145.) Mr. Lovelace was plant manager of the Airetool plant, essentially in charge of the move. When it was noted that various tools were missing after the transfer "Mr. Lovelace returned some of Cooper Tools' missing equipment under suspicious circumstances." (Response, Doc. No. 25, PageID 145.) Other equipment, however, remains missing. *Id.*

Mr. Newland quickly set up manufacturing equipment at DMTCO and immediately the competitive tools went into production. *Id.*  EGI helped accelerate the launch of DMTCO by providing funding and other assistance. (Response, Doc. No. 25, PageID 145.)

Once operational, in an effort to build a client base, representatives of EGI and/or DMTCO represented to customers that EGI's new "made in the USA line" was identical to the Airetool product line and encouraged customers to test the new products to confirm it. (Response, Doc. No. 25, PageID 146.) In addition there was a report from an existing Airetool customer that he had been contacted by one of the Defendants encouraging him to try the new product line manufactured by DMTCO and distributed by EGI.  This marketing, distribution, and sales tactic makes a plausible claim that Defendants had the knowledge that their product was "identical" to that produced by Airetool and that they had access to confidential customer information. Therefore, Plaintiff Apex sets forth a plausible claim that Defendant EGI knew or should have known that the trade secrets used by Individual Defendants were acquired by improper means and through a breach of secrecy and/or the disclosure or use of another's trade secret without the other's consent

The Court finds that when reading the Complaint as a whole, viewing the evidence in the light most favorable to the Plaintiff, and in making all justifiable inferences in its favor, the First Claim for Relief presents a plausible claim under a viable legal theory and may proceed. Defendant's Motion to Dismiss is denied as to the First Claim for Relief.

<u>Second Claim for Relief</u>
<u>Breach of Confidentiality Agreements against Individual Defendants</u>

The Second Claim for Relief is raised only against Individual Defendants, and as such is not part of EGI's Motion to Dismiss.

<u>Third Claim for Relief</u>
<u>Civil Conversion against all Defendants</u>

Plaintiff alleges that Defendants converted property owned by Apex to their own use, including but not limited to, certain tools, equipment, inventory, and confidential information such as Airetool designs and drawings, as well as other various forms of protected information. (Complaint, Doc. No. 1, PageID 15, ¶ 82.)

EGI again maintain that Apex's cause of action for conversion is inadequate and speculative. (Motion to Dismiss, Doc. No. 22, PageID 132.) Further, Apex fails to assert that EGI converted anything. Rather, Plaintiff asserts that the Individual Defendants converted the intellectual property from Apex for its Airetool line and put it to use in DMTCO's manufacturing of similar items. *Id*. DMTCO produced products sold to EGI and EGI in turn sold them to their customers. Apex does not claim that EGI at any point had dominion over the intellectual property at issue. *Id*.

Conversion is the "wrongful exercise of dominion over property in exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Compass Homes, Inc. v. Heritage Custom Homes*, 2014 U.S. Dist. LEXIS 64523, *20-21 (S.D. Ohio 2014)*, *quoting Joyce v. Gen. Motors Corp.*, 49 Ohio St. 3d 93, 96 (1990); *see also Zacchini v. Scripps-Howard Broadcasting Co.*, 47 Ohio St. 2d 224, 226 (1976). The elements of

conversion are 1) plaintiff's ownership or right to possession of the property at the time of the conversion; 2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and 3) damages. *Ride, Inc., v. Bowshier*, 2014 U.S. Dist. LEXIS 97274, *14 (S.D. Ohio 2014), *citing Dice v. White Family Cos.*, 173 Ohio App. 3d 472, 2007-Ohio-5755 (Ohio App. 2007); *City of Findlay v. Hotels.com, L.P.*, 441 F. Supp. 2d 855, 865 (N.D. Ohio 2006); *Young v. City of Sandusky*, 2005 U.S. Dist. LEXIS 12258, *28 (N.D. Ohio 2005).

As previously stated in the First Claim for Relief, Apex has set forth sufficient facts to plausibly support a claim of misappropriation of trade secret property. In setting forth these facts they have established a claim to ownership over the predecessor, Cooper Tools' Airetool line, including its "assets, liabilities, and contracts of various tool business subsidiaries of Danaher Corporation and Cooper Industries including, but not limited to those of Cooper Tools. . . ." (Response, Doc. No. 25, PageID 158-160); *see also* Complaint, Doc. No. 1, PageID 5, ¶ 25. Further they have set forth facts to support a claim of conversion through a wrongful act, to wit, the misappropriation of trade secrets that forms the basis for the First Claim for Relief. *See supra*. Apex alleges that Defendants have converted both intellectual and tangible property for their own use, as they used trade secrets and confidential business information to accelerate the launch of DMTCO, to target the items being produced, and to divert Apex Airetool customers to the new products made by DMTCO and distributed by EGI. *See supra*. As previously stated, there is a plausible claim that not only did DMTCO misappropriate designs and specifications for manufacturing purposes but that Defendants DMTCO and/or EGI had access to confidential client information. Apex alleges that it has suffered damages from a sharp decline in sales of the products due to the actions of the Defendants. *Id*. at PageID 161. Plaintiff has established a plausible cause of action and Defendant's Motion to Dismiss should be denied on this claim.

Fourth Claim for Relief
Civil Conspiracy against all Defendants

In the Fourth Claim for Relief, Plaintiff asserts that the Defendants acted in concert with one another in furtherance of accomplishing an unlawful goal, to wit, the interference of existing customer contracts and/or business relationships and/or misappropriation, disclosure, and/or use of confidential information and trade secrets. (Complaint, Doc. No. 1, PageID 16, ¶ 88.)

Defendants allege that the civil conspiracy pled by Apex is not actionable as "an underlying unlawful act is required before a civil conspiracy claim can be successful." (Motion to Dismiss, Doc. No. 22, PageID 130, *quoting Gosden v. Louis*, 116 Ohio App.3d 195, 219 (Ohio Ct. App. 1996)). In addition, a civil conspiracy claim must be "pled with some degree of specificity, and vague or conclusory allegations that are unsupported by material facts will not be sufficient to state a claim." *Id.*, *quoting Advanced Coatings Intern., Inc. v. Florida CirTech, Inc.*, 2012 WL 3067375 at *4 (July 27, 2012), *quoting Ghaster v. City of Rocky River*, 2010 WL 2802685 at *11 (N.D. Ohio May 12, 2010).

In Ohio, a civil conspiracy consists of: (1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) results in actual damages. In addition the existence of an unlawful act independent from the actual conspiracy in required for a conspiracy claim to succeed. *Williams v. Aetna Fin. Co.*, 83 Ohio St. 3d 464, 475 (1998); *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St. 3d 415, 419 (1995); *Universal Coach v. NYC Transit Authority*, 90 Ohio App. 3d 284 (Cuyahoga Cty. 1993), *citing Minarik v. Nagy*, 8 Ohio App. 2d 194, 26 Ohio Op. 2d 359 (1963). The requirement of an independent unlawful act is confirmed in *Williams*, 83 Ohio St. 3d at 475, *citing Gosden v. Louis*, 116 Ohio App. 3d 195, 219 (1996).

30

Again, accepting Apex's factual allegations as true, and in reading the Complaint as a whole, Plaintiff has set forth a plausible claim for relief and may proceed.  Plaintiff has set forth a factual basis that Individual Defendants and Defendants EGI were working together for the purpose of manufacturing and distributing products identical to those being manufactured by Apex and targeting Apex's client base in their own sales. *See supra* First Claim for Relief. Specifically it is alleged that EGI assisted DMTCO with funding and other forms of assistance for their initial set up and launch. (Complaint, Doc. No. 1, PageID 9, ¶ 49.)  Once DMTCO manufactured the "knock off" tools, EGI assisted with marketing, distribution, and sale of the products. *Id*. This included contacting customers and stating that the new products were identical to the Airetool products and encouraging the clients to test the products against each other, thus lending itself to the alleged claim that EGI knew or should have known that the Individual Defendants used misappropriated trade secrets to create an identical product. *Id*. at PageID 10, ¶¶ 55-56.  Defendants used Apex's confidential business information in furtherance of determining which products were in greatest demand by Apex customers and narrowed their initial manufacturing to those items. *Id*. at PageID 11, ¶ 58.  Additionally, EGI may still be working with customers and businesses obtained unlawfully through DMTCO's misappropriation of confidential client lists. *Id*. at PageID 12, ¶ 63.   As a result, Apex has suffered a sharp decline in the sale of products that are now offered by competitor DMTCO. Id. at PageID 11, ¶ 61. This supports a plausible claim of a malicious combination of two or more persons undertaking an independent unlawful act through misappropriation of trade secrets to injure Apex, and has resulted in damages.  Defendant's Motion to Dismiss on this ground is denied.

<u>Fifth Claim for Relief</u>
<u>Civil Liability for Criminal Acts against Individual Defendants</u>

Again, Apex has named only the Individual Defendants in this Count in their Complaint.

As such it is not subject to Defendant EGI's Motion to Dismiss.

<u>Sixth Claim for Relief</u>
<u>Texas Theft Liability Act (Tex. Civ. Prac. & Rem. Code § 134.001 et seq.) against Individual</u>
<u>Defendants</u>

As with the Second and Fifth Claims for Relief, this Claim was raised only against the

Individual Defendants and as such is not part of EGI's Motion to Dismiss.

**CONCLUSION**

For reasons set forth herein the Court recommends denying Defendant's 12(c) motion in

in its entirety.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the
proposed findings and recommendations within fourteen days after being served with this Report
and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen
days because this Report is being served by one of the methods of service listed in Fed. R. Civ.
P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected
to and shall be accompanied by a memorandum of law in support of the objections. If the Report
and Recommendations are based in whole or in part upon matters occurring of record at an oral

32

hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).